This is a workman's compensation suit in which the plaintiff seeks to recover for total, permanent disability because of an alleged injury suffered by him while in the course and scope of his employment. His demand is for compensation at the rate of $20 per week for a period not exceeding four hundred weeks and the suit is directed against his employer, W. Horace Williams Company, and the latter's compensation insurance carrier, Employers Liability Assurance Corporation, Ltd. In his petition the plaintiff alleges that on May 15, 1941, while performing his duties and services as a truck driver, he caught his foot in a light wire which was attached to certain machinery on the truck he was driving and he fell to the ground landing on his left pectoral region, striking boards and lumber that were scattered on the ground. He further alleges that upon movement of his left pectoral girdle he suffers intense pain; that pressure on the left border of his sternum above the level of the second rib also causes him pain and that all treatment he has taken has done him no good.
The defendants deny that the plaintiff is disabled; they admit that he sustained a slight accident and was treated for the injury resulting therefrom which consisted of abrasions and contusions on the left anterior wall of his chest and that he has completely recovered.
They set out that his wages were $3.20 per day at the time he was injured which would make his average weekly wage less than the amount on which he could recover the maximum compensation of $20 per week as he alleges in his petition, but during the trial of the case the defendants admitted that the wages were for the amount as stated by the plaintiff. The defendants further aver that plaintiff's regular occupation was that of a farmer and that he also worked for the W.P.A. and that he is able now to perform the same kind of labor he was performing prior to May 15, 1941, the day on which he claims that he was injured.
After trial of the case in the court below on the issues as just stated, judgment was rendered in favor of the defendants, dismissing the plaintiff's suit.
As there seems to be no dispute that the plaintiff did sustain an accident of some kind and that he was injured at some spot on his chest, which we take to be near the breast bone, it is useless for us to discuss the testimony relating to the accident and we will therefore confine ourselves to an analysis of the medical and other testimony relating to the injury.
Plaintiff, in testifying, attempted to describe an injury to his shoulder as well as to his chest, but the court sustained an objection to such testimony as being beyond the pleadings. The court did permit him however to testify regarding the condition which he claims exists with regard to his left arm and which he says arose out of nonuse of that arm because of the pain he suffered in movement from the injury to his chest. Besides, the plaintiff testified that before he was hurt in the accident, he weighed 130 pounds whereas now he weighs only 108. He also testified that he stayed in the temporary hospital at the site of the work until late the evening of the day on which he was injured, where he was examined by Dr. Dew and that he was later *Page 58 
sent to Alexandria where he was examined by Dr. H.H. Hardy. His testimony is that he suffers intense pain which prevents him from doing any kind of work at all.
He states that Dr. Dew saw him right after the accident and every other day thereafter for nine weeks, during which time he gave him diathermy treatments for his chest. After he had been treated by Dr. Dew for some time he received a letter from him informing him that Dr. Frank J. Cox, a highly recommended orthopedic specialist, was visiting Camp Polk and that he would be pleased to have him report there so that he could be examined by him. He reported for the examination and according to Dr. Cox's own testimony, was seen by him on July 11, 1941.
The doctors who were called as witnesses by the plaintiff were Dr. R. Strother, Dr. W.R. Reid and Dr. H.R. Officer. He also was examined by Dr. Marcello and by Dr. Attaway, but these last two doctors did not testify.
Dr. Strother found a tenderness in plaintiff's left pectoral region but having found nothing else wrong with him, only gave him pills to deaden the pain he complained of. He thinks that plaintiff has lost some weight and also seems to suffer pain when he lifts his left arm. In his opinion plaintiff cannot do any manual labor. On cross-examination this doctor says that he is of the opinion that plaintiff suffers pain because he says so. In other words, he found no objective symptoms of pain or injury at all.
Dr. Reid examined the plaintiff at different times and found him suffering from pain in the pectoral region but the symptoms were purely subjective. There was a certain tenderness under the breast plate for which he gave him diathermy treatment, which, however, did not do any good. He examined his lungs thoroughly, found them all right, and found no broken bones or fractures of any of the cartilages. He also says that Wingate spoke of a pain in his chest when he moves his arm and also he knows that he lost weight. On cross-examination he says that he found no objective symptoms of anything wrong with the plaintiff. Dr. Officer seems to be confident that the plaintiff has pain in his chest and that any movement of his arm or shoulder can cause him that pain. He went a little further than the other two doctors who testified as his witnesses, and said that plaintiff is suffering from neuritis which is traumatic in origin. He says that the nerves which supply the pectoral muscles in the chest are injured and the cartilages and ligaments are also injured. He knows that plaintiff is not malingering and that he is suffering pain.
Plaintiff supplemented his medical testimony with that of two lay witnesses, one being his brother, to corroborate the fact that he has lost weight since the time of the injury.
In addition to Dr. Cox, the defendant produced as other medical experts, Dr. H.H. Hardy, Dr. S.O. Frazer and Dr. H.O. Barker.
Dr. Cox, who as we have seen, had already examined plaintiff at the temporary hospital at Camp Polk, found him then to be complaining of constant pain which is made worse if his arm is not carried in a sling. He says that plaintiff stated that he had not used his arm for seven weeks and further that he could not sleep for any length of time without taking pills. He says that he expected such an injury as plaintiff complained of having been sustained in the accident, but that it could not remain in the severe state that plaintiff claims for seven weeks. Any injury to the ligaments, muscles or nerves, would have produced some objective symptoms, and that any ligament injury would show definite limitation of shoulder motion plus muscle atrophy. A nerve injury would have produced a sensory disturbance with atrophy of musculature. He states that if plaintiff had made no use of his arm for the period of time he claims, there should have been some atrophy of the muscles of the arm to develop and he sees no signs of any such atrophy.
Dr. Hardy saw the plaintiff in February, 1942, and seems to have made a rather thorough and complete examination both physically and according to X-rays. He could find nothing wrong with him. All the bony structures of the region complained of were normal and there was no evidence of atrophy in any of the muscles such as would have appeared from lack of use of his arm. He further found no evidence of injury to the nerves, ligaments and cartilages of the chest, and there was no neuritis. If he had had any nerve severed or degenerated, there would have been muscle atrophy or paralysis of the muscle supplied by the nerve involved. This doctor found that the plaintiff has excess acidity in his stomach which he says may have *Page 59 
accounted for some of the burning pains he complained of in his chest, especially so since plaintiff stated that he felt the pain more on an empty stomach and was relieved after eating. He expressed this latter opinion after his examination of the X-ray plates which had been made by Dr. H.O. Barker and Dr. Barker's testimony was confined more or less to a statement that he had made the X-ray plates and that he had reported his findings to Dr. Hardy. He does state that the gastric analysis of plaintiff's stomach showed a hydrochloric acidity in excess of almost 100% of normal.
Sr. S.F. Frazer also examined the plaintiff in February, 1942, and found everything in the left pectoral region normal. He found no atrophy in any muscles, found no neuritis and says that plaintiff's pain is too general to indicate a nerve injury. After the defendants' medical experts' testimony had been introduced, plaintiff was recalled to the stand for the purpose no doubt of counteracting the opinion given by all of them, that lack of use of his arm would have produced atrophy of the muscles which none of them found. It is implied from his testimony in rebuttal that at night when he removed his arm from the sling in order to go to sleep he rested it by laying it on his stomach some times and at other times by resting it on a pillow. Whether that would be sufficient movement or not to prevent atrophy is however not shown.
Analyzing all of the foregoing testimony we find one thing positive and that is that the plaintiff has no objective signs or symptoms of any injury such as he stated caused him to suffer the pain he does. It strikes us that with all of the testimony we have before us, there should be at least some objective sign resulting after the injury, if not immediately following it, because it is definitely shown that if the plaintiff did not make use of his arm for as long a period as he says there would necessarily have been signs of atrophy or paralysis of some kind. Certainly there are no fractures of any of the bones or of the ligaments and save for the testimony of Dr. Officer, there are no injuries shown to have been sustained by any of the nerves. Plaintiff's own doctors, Dr. Strother and Dr. Reid, could find no objective symptoms and their testimony regarding the pain was based on what the plaintiff told them.
In a case of this kind we believe that it is a good thing to yield in a large measure to the finding of fact of the trial judge as his observation of the plaintiff himself, no doubt, enabled him to form a better opinion and to better judge the character of the claim that is made. There were no reasons for judgment handed down but the district judge no doubt concluded that plaintiff had failed to substantiate his claim by the proof which was required and we cannot say that there has been manifest error committed.
Judgment affirmed.